Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, <br><br>         Plaintiff, <br><br>   vs. <br><br> METROMILE, INC., DAN PRESTON, COLIN BRYANT, JOHN BUTLER, SANDRA CLARKE, RYAN GRAVES, and VIKAS SINGHAL, <br><br>         Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Metromile, Inc. ("Metromile" or the "Company") and the members of Metromile's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Metromile will be acquired by Lemonade, Inc. ("Lemonade") through Lemonade's subsidiaries Citrus Merger Sub A, Inc. ("Acquisition Sub I") and Citrus Merger Sub B, LLC ("Acquisition Sub II") (the "Proposed Transaction").

2. On November 8, 2021, Metromile and Lemonade issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated November 8, 2021 (the "Merger Agreement") to sell Metromile to Lemonade. Under the terms of the Merger Agreement, each Metromile stockholder will receive 0.05263 shares of Lemonade common stock for each share of Metromile common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $500 million.

3. On December 29, 2021, Metromile filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Metromile stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and Lemonade's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Allen & Company LLC ("Allen & Company"); (ii) the background of the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Metromile's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Metromile.

9. Defendant Metromile is a Delaware corporation, with its principal executive offices located at 425 Market Street #700, San Francisco, California 94105. The Company is a leading digital

insurance platform in the United States. Metromile's common stock trades on the Nasdaq Capital Market under the ticker symbol "MILE."

10. Defendant Dan Preston ("Preston") has been Chief Executive Officer ("CEO") of the Company since 2014, and a director at all relevant times.

11. Defendant Colin Bryant ("Bryant") has been a director of the Company at all relevant times.

12. Defendant John Butler ("Butler") has been Chairman of the Board since August 31, 2021, and a director of the Company since August 4, 2021.

13. Defendant Sandra Clarke ("Clarke") has been a director of the Company since August 31, 2021.

14. Defendant Ryan Graves ("Graves") has been a director of the Company at all relevant times.

15. Defendant Vikas Singhal ("Singhal") has been a director of the Company at all relevant times.

16. Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

17. Lemonade is a Delaware corporation, with its principal executive offices located at 5 Crosby Street, 3rd Floor, New York, New York 10013. Lemonade offers renters, homeowners, pet, car, and life insurance. Powered by artificial intelligence and behavioral economics, Lemonade's full stack insurance carriers in the US and the EU replace brokers and bureaucracy with bots and machine learning, aiming for zero paperwork and instant everything. A Certified B-Corp, Lemonade gives unused premiums to nonprofits selected by its community, during its annual Giveback. Lemonade is currently available in the United States, Germany, the Netherlands, and France, and continues to

expand globally. Lemonade's common stock trades on the New York Stock Exchange under the ticker symbol "LMND."

18. Acquisition Sub I is a Delaware corporation and a wholly owned subsidiary of Lemonade.

19. Acquisition Sub II is a Delaware limited liability company and a wholly owned subsidiary of Lemonade.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Incorporated in 2011, Metromile provides pay-per-mile car insurance services in the United States and internationally. With data science at its foundation, Metromile offers real-time, personalized auto insurance policies by the mile instead of the industry's reliance on approximations. Metromile's digitally native offering is built around the modern driver's needs, featuring automated claims, complimentary smart driving features and annual average savings of 47% over what they were paying their previous auto insurer. In addition, through Metromile Enterprise, Metromile licenses its technology platform to insurance companies around the world. Metromile's cloud-based software as a service enables carriers to operate with greater efficiency, automate claims to expedite resolution, reduce losses associated with fraud, and unlock the productivity of employees.

21. Metromile went public in February 2021, following the completion of its business combination with INSU Acquisition Corp. II, a publicly traded special purpose acquisition company.

22. On November 15, 2021, Metromile announced its third quarter 2021 financial results. Total revenue was $30.0 million, compared to $8.0 million in the third quarter 2020. For the nine months ended September 30, 2021, total revenue was $75.4 million, up from $24.4 million in the same period of the prior year. Net loss per share was $0.21, as compared to net loss per share of $1.20 in the third quarter of 2020. For the nine months ended September 30, 2021, net loss per share

was $1.56, improved from net loss per share of $4.10 in the same period of 2020. Reflecting on the Company's results, defendant Preston stated:

> During the quarter, we continued to make progress on and invest in our growth initiatives, and while our Policies in Force were largely flat for the quarter ending September 30, 2021, Policies in Force have now grown for three consecutive months, including October. We also saw a rising cost of acquisition as we ramped our investment to increase our brand awareness and reinforce trust with customers. Key initiatives included refreshing our messaging to align with drivers' current needs, expanding our Independent Agent channel with a comparative rater integration, and continued work toward state expansion. Additionally, Metromile Enterprise continues to make progress, signing up new customers like Buckle for its software solutions.

**The Proposed Transaction**

23.     On November 8, 2021, Metromile and Lemonade issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> New York (November 8, 2021)—Lemonade (NYSE: LMND) the insurance company powered by AI and social good, and Metromile (NASDAQ: MILE, MILEW), the data science company focused on auto insurance, have entered into a definitive agreement pursuant to which Lemonade will acquire Metromile in an all-stock transaction that implies a fully diluted equity value of approximately $500 million, or just over $200 million net of cash. Under the terms of the transaction, Metromile shareholders will receive Lemonade common shares at a ratio of 19:1.
>
> While Lemonade has been at the forefront of using big data and AI in home and pet insurance, Metromile has been trailblazing a parallel path for car insurance. Metromile's car-mounted precision sensors took over 400 million road trips in recent years, covering billions of miles and sending real-time streams to the Metromile cloud. These were cross referenced with actual claims data, yielding precise predictions for losses per mile driven. These algorithms hold the promise of propelling Lemonade Car from a newcomer in the car insurance space to its vanguard.
>
> "We launched Lemonade Car last week, and we think you'll love how it looks and handles. Pop the hood and you'll see that it's powered by telematics and architected to learn from the data it generates, with precision pricing as its ultimate destination," said Daniel Schreiber, Lemonade CEO and cofounder. "That's where Metromile comes in. They have been down this road billions of times, and their proprietary data and machine learning algorithms can vault us over the most time and cost intensive parts of the journey. In a vast and competitive market like auto insurance, today's deal is a huge unlock of value for our customers and shareholders."
>
> Metromile enjoys 49 state licenses, over $100 million of seasoned in-force premium (IFP), over $250 million of cash on the balance sheet, and a team unmatched for their expertise in harnessing big data and AI for car insurance.

"We've long admired Lemonade for its beautiful products, world-class customer experience, unprecedented growth, and socially-impactful business model," said Dan Preston, CEO of Metromile. "The data science-driven technology platform we built created fairer and more individualized car insurance for consumers in an industry marred by vast inequities. Joining forces with Lemonade Car will create the most customer-centric, fair, and affordable car insurance, and is a great outcome for Metromile shareholders, who will benefit as shareholders of the combined company. It also means that now, homeowners, renters, and drivers alike can have all of their insurance needs with a single company that truly has their best interests at heart."

The transaction is expected to close during Q2 2022, once all regulatory approvals have been secured. The transaction requires the approval of Metromile stockholders, and is subject to other customary closing conditions.

**Insiders' Interests in the Proposed Transaction**

24. Metromile insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Metromile.

25. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Lemonade. For example, each outstanding Metromile restricted stock unit ("RSU") award held by Metromile's non-employee directors and each Metromile RSU award that is outstanding and vests based on the achievement of performance criteria will be converted into the right to receive cash payments.

26. In addition, two Metromile executive officers who are not named executive officers are eligible to receive retention benefits from Lemonade in the aggregate amount of $300,000.

27. Moreover, in connection with the execution of the Merger Agreement, defendant Preston has entered into an offer letter with Lemonade which provides for (i) $450,000 in annual base salary; (ii) a grant of a Lemonade RSU award covering 100,000 shares of Lemonade common stock, which will vest over a four-year period; and (iii) a grant of 120,000 Lemonade stock options, which will vest over a five-year period.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

28. Further, if he is terminated in connection with the Proposed Transaction, defendant Preston stands to receive substantial cash severance payments as set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2][3] | Perquisites/ Benefits ($)[4] | Total ($) |
|---|---|---|---|---|
| Dan Preston | 450,000 | 5,403,754 | 19,924 | 5,873,678 |

**The Proxy Statement Contains Material Misstatements or Omissions**

29. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Metromile's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

30. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and Lemonade's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Allen & Company; (ii) the background of the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest.

*Material Omissions Concerning the Company's and Lemonade's Financial Projections and Allen & Company's Financial Analyses*

31. The Proxy Statement omits material information regarding the Company's and Lemonade's financial projections.

32. For example, the Proxy Statement fails to disclose the line items underlying the Company's and Lemonade's respective unlevered free cash flow over the projection period.

33. The Proxy Statement also fails to disclose Metromile's unlevered free cash flows for the July Metromile forecasts.

34. The Proxy Statement omits material information regarding Allen & Company's financial analyses.

35. The Proxy Statement describes Allen & Company's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Allen & Company's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Metromile's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Allen & Company's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

36. With respect to Allen & Company's *Selected Public Companies Analyses* and *Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the comparable companies and transactions observed by Allen & Company, respectively; and (ii) with respect to the *Selected Public Companies Analyses* of Metromile, Metromile's calendar year 2022 estimated gross premium.

37. With respect to Allen & Company's *Discounted Cash Flow Analysis* of Metromile, the Proxy Statement fails to disclose: (i) the value of the potential tax benefit of Metromile's net operating losses; (ii) quantification of Metromile's fiscal year 2031 estimated net operating profit after tax for its insurance operations and fiscal year 2031 estimated revenue for its enterprise business operations, used to calculate the implied terminal values for the Company; (iii) quantification of the implied terminal values for Metromile; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 8.5% to 9.5%.

38. With respect to Allen & Company's *Discounted Cash Flow Analysis* of Lemonade, the Proxy Statement fails to disclose: (i) the value of the potential tax benefit of Lemonade's net operating losses; (ii) quantification of Lemonade's fiscal year 2031 estimated net operating profit

after tax, used to calculate the implied terminal values for Lemonade; (iii) quantification of the implied terminal values for Lemonade; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.0%.

39. Without such undisclosed information, Metromile stockholders cannot evaluate for themselves whether the financial analyses performed by Allen & Company were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Allen & Company's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

40. The omission of this material information renders the statements in the "Certain Financial Forecasts Utilized by Metromile in Connection with the Mergers" and "Opinion of Metromile's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

41. The Proxy Statement fails to disclose material information regarding the background of the Proposed Transaction.

42. For example, the Proxy Statement sets forth that on August 23, 2021, Metromile executed a non-disclosure agreement ("NDA") with a party referred to as "Party B." The Proxy Statement, however, fails to disclose whether the NDA includes a "don't-ask, don't-waive" ("DADW") standstill provisions that is presently precluding Party B from submitting a topping bid for the Company.

43. The failure to disclose the existence of DADW provisions creates the false impression that any potential bidder who entered into an NDA could make a superior proposal for the Company.

If those NDAs contain DADW provisions, then those potential bidders can only make a superior proposal by (i) breaching the NDA—as in order to make the superior proposal, they would need to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

44.     Any reasonable Metromile stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

45.     Additionally, the Proxy Statement sets forth that at the August 26, 2021 Board meeting, the Board approved contacting additional third parties to gauge their interest in a transaction with the Company, and Allen & Company subsequently contacted such parties. *See* Proxy Statement at 83. The Proxy Statement fails to disclose the number of third parties approved by the Board and contacted by Allen & Company.

46.     The omission of this material information renders the statements in the "Background of the Mergers" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

47.     The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's insiders.

48.     For example, the Proxy Statement sets forth:

> In connection with the execution of the merger agreement, Mr. Preston entered into an offer letter with Lemonade. Mr. Preston's offer letter provides for (i) $450,000 in annual base salary, (ii) a grant of a Lemonade RSU award covering 100,000 shares of Lemonade common stock, which will vest over a four-year period, with 25% of such restricted stock units vesting on the one year anniversary of the effective time and 6.25% of such restricted stock units vesting on each quarterly anniversary thereafter, subject to Mr. Preston's continued employment through each vesting date, and (iii) a grant of 120,000 stock options covering shares of Lemonade common stock, which will vest over a five-year period, with 25% of the stock options vesting on the third anniversary of the effective time, an additional 25% of the stock options vesting on

the fourth anniversary of the effective time, and the remaining 50% of the stock options vesting on the fifth anniversary of the effective time.

*Id.* at 198. The Proxy Statement, however, fails to disclose the position defendant Preston will assume with Lemonade upon closing of the Proposed Transaction, as well as the details of the employment and retention-related discussions and negotiations that occurred between Lemonade and Metromile's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Lemonade's proposals or indications of interest mentioned management retention, consulting arrangements or equity participation in the combined company.

49. Moreover, the Proxy Statement sets forth:

Each outstanding and unexercised Metromile stock option held by any individual who was not employed by or providing services to Metromile as of November 8, 2021, will, as of the effective time, be converted into the right to receive an amount in cash, without interest, equal to the Option Consideration.

* * *

Each outstanding Metromile RSU award held by Metromile's non-employee directors and each Metromile RSU award that is outstanding and vests based on the achievement of one or more performance criteria will be cancelled and converted automatically into the right to receive an amount in cash, without interest, equal to the RSU Consideration.

*Id*. at 196. Yet, the Proxy Statement fails to disclose: (i) the identities of the non-employee directors that hold Metromile options and RSU awards; and (ii) the amount of compensation the non-employee directors stand to receive for their outstanding Company options and RSU awards.

50. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

51. The omission of this material information renders the statements in the "Background of the Mergers" and "Interests of the Company's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

52. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Metromile will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

53. Plaintiff repeats all previous allegations as if set forth in full.

54. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

55. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided

- 13 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

by Allen & Company, and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

56.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

57.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

58.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

59.     Plaintiff repeats all previous allegations as if set forth in full.

60.     The Individual Defendants acted as controlling persons of Metromile within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Metromile, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

61.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

63. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

64. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Metromile's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Metromile, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and

disseminate the material information identified above to Metromile stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 11, 2022

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile: 310/209-2348
        -and-
Richard A. Acocelli
305 Broadway, 7th Floor
New York, NY 10007
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*